UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANTHONY JACOBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00625-JMS-MJD |
| | ) | |
| BRANDON PHERSON, | ) | |
| | ) | |
| Defendant. | ) | |

**Order Denying Plaintiff's Motion for Summary Judgment,
Granting Defendant's Cross Motion for Summary Judgment,
and Directing Entry of Final Judgment**

Plaintiff Anthony Jacobs, an Indiana Department of Correction (IDOC) inmate, filed this 42 U.S.C. § 1983 action based on allegations that defendant Brandon Pherson retaliated against him in violation of the First Amendment and made defamatory and slanderous statements about him. Dkt. 2. Mr. Jacobs' federal and state law claims proceed. Dkt. 8. The parties seek resolution of these claims by filing competing dispositive motions. Dkt. 30; dkt. 38.

For the reasons explained below, Mr. Pherson's motion for summary judgment, dkt. [38], is **GRANTED**, and Mr. Jacobs' motion for summary judgment, dkt. [30], is **DENIED**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them.

2

*Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of

a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn

in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427,

429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of

cross-motions for summary judgment does not imply that there are no genuine issues of material

fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150,*
*AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II. Statement of Facts[1]

The motions for summary judgment relate to Mr. Jacobs' claim that his demotion from his

prison job was the product of retaliation against him for filing a grievance against Mr. Pherson.

The following statement of facts has been evaluated pursuant to the standard set forth above. The

facts are considered undisputed except to the extent that disputes are noted.

### A. The Parties

Mr. Jacobs is an IDOC inmate, who at all times relevant to his complaint, was housed at

Putnamville Correctional Facility (PCF). Dkt. 40-1 at 12. Mr. Jacobs spent over a year working in

the pallet shop at PCF, until an injury to his hand required him to seek a different type of work.

---

[1] The Court notes that Mr. Jacobs has submitted several filings related to his dispositive motion and in response to the defendant's cross motion. *See, e.g.*, dkts. 32 and 33 (affidavits); dkts. 35 and 37 (statement of material facts and affidavit in support); dkt. 44 (submission of designation of evidence). Though the Court discourages such piecemeal filings and cautions Mr. Jacobs from engaging in this practice in the future, the Court has reviewed these filings in summarizing the statement of relevant facts in this action. Many of these filings repeat the same factual assertions and chronological timeline of events that Mr. Jacobs uses to support his claims against the defendant. Additionally, the Court notes that many of Mr. Jacobs' facts are not relevant to the claims at issue, and thus, the Court has omitted them.

Dkt. 32 at 1. Because of his medical needs, Mr. Jacobs was re-classified in May 2019 to a position as a cook in the Officer's Dining Room (ODR)[2] at the facility. *Id.*; dkt. 40-1 at 14.

Brandon Pherson is the Food and Services Director at PCF and held this position during 2019. Dkt. 40-2, ¶ 2. Mr. Pherson's position is "to oversee the production and preparation of meals for inmates" at the facility and to oversee inmate employees working in food services. *Id.*, ¶ 3. His role includes management of the ODR. *Id.*

**B. The ODR, Theft, and Mr. Jacobs' reassignment to PDR**

Mr. Jacobs began working as a cook in the ODR on or about May 20, 2019. *Id.*, ¶ 4; dkt. 33 at 2-3; dkt. 40-1 at 16. He received B-level state pay and worked in this position for approximately 29 days. Dkt. 40-1 at 16.

Mr. Pherson attests that "[s]hortly after Mr. Jacobs began working in the ODR we began to experience thefts. Specifically, we had a significant amount of unaccounted for food in the ODR." Dkt. 40-2, ¶ 5. Part of Mr. Pherson's duties include addressing theft as "[i]nmates are not permitted to steal food from the facility." *Id.* Several inmates worked in the ODR at this time, but Mr. Jacobs was the newest person assigned. *Id.*, ¶ 6. Mr. Pherson suspected that 2-3 workers were likely responsible for the thefts because "large quantities were missing on a daily basis." *Id.* Mr. Pherson's approach to the theft problem was to rotate one of the inmates to another job assignment to allow him "to determine who was engaging in the thefts and to keep personal supervision over Mr. Jacobs." *Id.*, ¶ 7. When addressing food theft, rotating employees is a strategy employed that

---

[2] Mr. Jacobs states that working in the ODR is considered one of the best jobs at PCF because there are certain privileges including air conditioning and the ability for inmates working this position to be able to order anything on the officers' menu for free. Dkt. 33 at 3.

"typically stops the thefts." *Id.* Further, Mr. Pherson attests that Mr. Jacobs had a poor attitude[3] during this first assignment to the ODR, and that a job transfer to the Population Offenders' Dining room (PDR)[4] would allow Mr. Pherson to observe Mr. Jacobs' attitude further. *Id.*

Mr. Pherson "made the request to reclassify Mr. Jacobs on June 19, 2019," before he knew of a grievance that Mr. Jacobs filed against him.[5] *Id.*, ¶ 8. Mr. Jacobs testified that his name was removed off the ODR list on June 20, 2019, the day after his grievance was received. Dkt. 40-1 at 27. On June 24, 2019, Mr. Jacobs was supposed to report for work in the PDR, but he never actually

---

[3] Mr. Jacobs states he had no issues with other Aramark employees at this time, was not disciplined or talked to about his performance or attitude, and did not receive a work evaluation until July 30, 2019, after he had been transferred back to the ODR. Dkt. 40-1 at 17. He never requested any work evaluations during his initial assignment in the ODR. *Id.* at 18.

[4] Mr. Jacobs states that the PDR is where all the inmates eat, that it has a high turnover rate, and that no one wants to work there. Dkt. 33 at 4.

[5] Mr. Jacobs points out what he believes are inconsistencies in two affidavits from Mr. Pherson. The Court finds there is no inconsistency.  Though the statements in the affidavits are not the same, they do not create a material fact issue. In both affidavits, Mr. Pherson maintains that he was unaware of the grievance being filed before transferring Mr. Jacobs to the PDR. Dkt. 28-1; dkt. 40-2.

Further, the Court *sua sponte* struck the defendant's initial motion for summary judgment, brief in support, and designation of evidence from the record, including the April 6, 2021 affidavit. Dkt. 34. Mr. Pherson has provided sufficient explanation that while reviewing the facts of the case, he "recalled that he had made the reclassification request on June 19, 2021, and amended his declaration to correctly state that fact." Dkt. 46 at 3.

In Mr. Jacobs' version of the facts, he claims several conversations occurred regarding Mr. Pherson which do not provide evidence that Mr. Pherson was aware of the grievance before initiating the transfer. These statements and contents of those conversations are inadmissible hearsay, and the Court cannot deny summary judgment based upon them. *See Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). Mr. Jacobs also included written statements from two offenders that were attached to Mr. Jacobs' complaint, but these are not verified affidavits or declarations signed under penalty of perjury, and even if they were, they do not create a material fact issue that Mr. Pherson was aware of any grievance filed against him and acted in retaliation based on that grievance by transferring Mr. Jacobs to the PDR. Dkt. 2-2 at 16.

worked at the PDR because he contacted other facility staff members and sought other positions.[6] *Id.* at 27-28. He states that this transfer to PDR was a demotion from B-level pay to D-level pay. Dkt. 30 at 4.

### C. June 2019 Grievance

Mr. Jacobs alleges that Mr. Pherson transferred him from the ODR to the PDR in retaliation for filing a grievance against Mr. Pherson about an incident involving a racially derogatory comment. The Court summarizes the events leading up to the grievance and the events that occurred in response to the grievance.

On Memorial Day, all inmates were to receive a holiday meal. Dkt. 40-1 at 19-22. But Mr. Pherson reported that he would provide the holiday meal trays to the ODR workers, including Mr. Jacobs, later in the week, instead of on the actual holiday. *Id.* Complaints were made to the warden about the issue, and Mr. Pherson ended up delivering the holiday meal trays on time. *Id.* Mr. Jacobs testified that Mr. Pherson told the ODR workers that they would be put on sack lunch restrictions in the future, rather than be allowed to eat anything they wanted in the ODR, as was a standing privilege they had been permitted. *Id.*

On May 27, 2019, Mr. Jacobs brought up the issue about the meals with Mr. Pherson, and he claims that Mr. Pherson cut him off and said: "I've used my one black card for the day. See me tomorrow." *Id.* at 19, 24. Mr. Jacobs states he was removed from the PDR on June 18, 2019 because Mr. Pherson said he "was getting smart mouth with him," and that Mr. Pherson told him his services were no longer needed. Dkt. 30 at 2-3.

---

[6] Mr. Jacobs was offered a cleaning job in the administrative building and was willing to accept it, but he was redirected to a sanitation job that he worked for about a week. He then left the sanitation job because it was not conducive to his medical issues. Dkt. 40-1 at 28-29.

On June 18, 2019, after he left the PDR, Mr. Jacobs, upset about the incident about the derogatory "one black card" comment from May, went to see the grievance specialist.[7] *Id.* He filed a formal grievance[8] against Mr. Pherson, dated June 19, 2019. *See* dkt. 40-2 at 5. The grievance was stamped received on the same day. *Id.* Mr. Jacobs had his wife and family call PCF and Aramark in Indianapolis to complain about this issue, and he also wrote his own complaint letter.[9] Dkt. 30 at 3.

The grievance was signed by the facility grievance specialist and date stamped next to this signature, June 26, 2019. Dkt. 40-2 at 5. Mr. Pherson attested that he was contacted by the facility grievance office on or around July 9, 2019, to respond to the grievance. *Id.*, ¶ 8. Though the

---

[7] Mr. Jacobs stated he told the grievance specialist he put in a request for interview form about Mr. Pherson, and that the specialist gave him a grievance form to fill out. Dkt. 30 at 2.

[8] The grievance stated: "I feel like I have been judged and executed for things I haven't done. I feel that my ethnic background was thrown into my face when Mr. Brandon [Pherson] said he only uses one black card a day and that I was forced into losing my position because of my race and/or color. I also feel like he is retaliating against because he thinks I went to [the warden] on him when I didn't. I tried to be professional at all times, and treat everyone with respect. I was not treated with the same respect and was placed on hold. I feel my job should be reinstated as well as cultural diversity/racism training for officers. As well as C/O being talked to." Dkt. 40-2 at 5 (cleaned up).

[9] Mr. Jacobs' complaint includes attachments that pertain to these statements. For example, Aramark responded to Mr. Jacobs in a letter dated June 26, 2019, instructing him to follow the proper channels at PCF and to file a grievance related to his issue. *See* dkt. 2-2 at 9-10. Mr. Jacobs' wife emailed several non-defendant individuals at the IDOC on June 23, 2019, and this email discussed the derogatory comment and that Mr. Jacobs believed that when Mr. Pherson asked him to leave the PDR on June 18, 2019, that he had been fired and was going to receive a write up. *Id.* at 12. The next day, one of the individuals responded that the email would be forwarded to the director of compliance to provide assistance. *Id.* The Court finds to the extent that Mr. Pherson references these exhibits to create a material factual issue, he has not done so. These materials were not addressed to Mr. Pherson, nor do they establish that Mr. Pherson was aware of any of correspondence or that any grievance was filed against him. The materials also appear to have occurred after Mr. Pherson attested that he decided to transfer Mr. Jacobs from the PDR on June 20, 2021.

grievance was not about reclassification issues, Mr. Pherson was asked to address the grievance and Mr. Jacobs' transfer. *Id.*

Mr. Pherson responded to the grievance on July 9, 2019. *Id.* at 6. Mr. Pherson attested that he did not make the derogatory comment. *Id.*, ¶ 8. The grievance response indicated: "Aramark Supervisor Pherson reports that your job at ODR was changed to PDR due to poor attitude and rumors of theft. Mr. Pherson reports that the comment you claim he made was over two months[10] ago and not what you claim."[11] *Id.* at 6. The grievance response noted that once a position opened back up in the ODR, that Mr. Jacobs would be reassigned back to that position. *Id.* This form was signed by the grievance specialist on July 9, 2019, and by Mr. Jacobs, on what appears to be July 10, 2019. *Id.*

Mr. Jacobs completed his first and second level appeals of the grievance response. *Id.* at 7. The appeal responses indicated that Mr. Jacobs returned to work in the ODR on July 15, 2019, and that the grievance had been resolved. *Id.* Mr. Pherson stated that since Mr. Jacobs' second transfer to the ODR, "his work was satisfactory and he received good reviews."[12] *Id.*, ¶ 9. Mr. Jacobs stated he stayed in the ODR until August 28, 2019, when he moved into a different program. Dkt. 40-1 at 30.

---

[10] Mr. Jacobs takes issue with Mr. Pherson's response that the incident happened *over* two months ago—specifically he states this is untrue because he would have still been in the pallet shop at that time. Dkt. 33 at 1. Mr. Pherson responded to Mr. Jacobs' grievance in July 2019 about an incident that occurred previously in May 2019. Mr. Pherson's exact calculation of time here has no bearing on Mr. Jacobs' claims, and further, taken literally, May is two months before July.

[11] Mr. Pherson attested that he "explained to the grievance officer that we had been experiencing thefts and that Mr. Jacobs had a poor attitude. I further explained the strategy of rotating one inmate worker out when thefts were occurring. I did not specifically state that Mr. Jacobs was committing the thefts, nor have I ever advised anyone that he was specifically stealing food." Dkt. 40-2, ¶ 9.

[12] Mr. Jacobs stated he received three positive performance evaluations during this time, each of which he requested. Dkt. 40-1 at 33.

### III. Discussion

Mr. Jacobs contends that Mr. Pherson violated the First Amendment by removing Mr. Jacobs from his job in the ODR in retaliation for filing a grievance. Mr. Jacobs also argues that Mr. Pherson's grievance response included defamatory and slanderous statements. Dkt. 45. Both parties seek judgment as a matter of law in their favor. Dkt. 30; dkt. 38.

### A. First Amendment Retaliation Claim

"To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

First, there is no dispute that Mr. Jacobs engaged in activity protected by the First Amendment. "'A prisoner has a First Amendment right to make grievances about conditions of confinement.'" *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010)). Second, for the purposes of these cross-motions for summary judgment, the Court assumes that Mr. Jacobs' transfer to another prison job, that he testified was a demotion in pay, is an adverse action. Thus, the dispositive issue is whether Mr. Jacobs' grievance was a motivating factor for his removal from his job in the ODR.

At summary judgment, the burden of proof on whether the protected activity was a motivating factor for the alleged retaliation "is split between the parties." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, a plaintiff "must produce evidence that his speech was at least a motivating factor . . . of the [] decision to take retaliatory action against him." *Id.* The burden then shifts to the defendant "to rebut the causal inference raised by the plaintiff's

evidence." *Id.* If the defendant rebuts the causal inference by demonstrating a legitimate reason for the alleged retaliatory action, "the plaintiff must present evidence that the defendant's proffered explanation is pretextual." *Lalvani v. Cook Cnty., Ill.*, 269 F.3d 785, 790 (7th Cir. 2001).

Mr. Jacobs' retaliation claim fails because he has not satisfied his initial burden of producing evidence that his grievance was a motivating factor for Mr. Pherson's decision to transfer him to the PDR. Mr. Jacobs' argument turns on one of timing—that he filed a grievance and by the next day he was reclassified in retaliation—but the timing of the events, though perhaps suspicious, are not enough to conclude that retaliation occurred. "Suspicious timing alone will rarely be sufficient to create a triable issue because '[s]uspicious timing may be just that— suspicious—and a suspicion is not enough to get past a motion for summary judgment.'" *Manuel v. Nalley*, 966 F.3d 678 at 680 (7th Cir. 2020) (inmate's cell searched nine minutes after inmate's protected conversation with counselor was not sufficient for retaliation claim) (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)). Mr. Jacobs submits no evidence to create a nexus between his filing of the grievance and Mr. Pherson's knowledge of that grievance, before his transfer took place. Rather, it is undisputed that Mr. Pherson did not respond to the grievance until July 9, 2019, when he first learned it existed, well after Mr. Jacobs was transferred to the PDR.

Mr. Jacobs points to several IDOC policies and cites violations of those policies, in effort to support his claim. For example, that he was not on his job for 90-days prior to being transferred, that he did not receive an offender evaluation and performance report prior to the transfer, and that he should have been able to use the offender grievance policy without fear of retaliation, but these arguments fail. Dkt. 45. A violation of policy by itself is insufficient to establish a constitutional violation. "Section 1983 protects against 'constitutional violations, not violations

10

of . . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740,

746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)). Perhaps, most

relevant is Mr. Jacobs' reference to the grievance policy 00-02-301, which he argues states that

after review and acceptance of a grievance from an offender, the grievance specialist shall submit

the grievance and staff response sheet to the appropriate facility staff or supervisor for response

within 1 business day. Dkt. 45 at 6. But, even taking this policy into consideration as

circumstantial evidence that Mr. Pherson should have received the grievance on June 18 or 19,

2019, in short order after it was filed, it is not evidence that he did receive the grievance then.

And there is no evidence that such policy was followed in this instance. Thus, any arguments

pertaining to IDOC policies are not enough for Mr. Jacobs to establish his burden.

Based on the evidence in the record, no reasonable fact finder could conclude that Mr.

Pherson was aware of the protected activity. Because the evidence supports that Mr. Pherson's

actions took place before his knowledge of the grievance, Mr. Jacobs cannot meet the required

third element of a retaliation claim—that his protected activity was a motivating factor in his job

transfer. Thus, this ends the Court's analysis without engaging in any further shift of the parties'

burden.

Therefore, Mr. Pherson is entitled to summary judgment as a matter of law on this federal

claim.

### B. Defamation and Slander

Mr. Jacobs asserts a state law claim of defamation and slander against Mr. Pherson.

Because the Court has dismissed Mr. Jacobs' First Amendment retaliation claim, the Court must

decide whether it should exercise supplemental jurisdiction over his state law claims.

### 1. Supplemental Jurisdiction

The Court has discretion whether to exercise supplemental jurisdiction over a plaintiff's state-law claims when the federal claims have been dismissed. *Carlsbad Tech., Inc. v HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see also* 28 U.S.C § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "[J]udicial economy, convenience, fairness and comity may point to federal retention of state-law claims . . . when it is absolutely clear how the pendent claims can be decided." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 461 (7th Cir. 2020) (internal quotation omitted). That is the case here.

### 2. Discussion

Mr. Jacobs argues that Mr. Pherson defamed and slandered his name by "saying things that were not true." Dkt. 32 at 1-2. Pursuant to the Court's screening order, Mr. Jacobs was allowed to proceed on this state law claim based on the comments that he had a poor attitude and that there were rumors of theft. Dkt. 8 at 5. Specifically, Mr. Jacobs argues that Mr. Pherson communicated these statements to the grievance specialist, and this caused damage to his name and prevented him from getting another job cleaning in the administration building. Dkt. 32 at 2.

To establish defamation, Mr. Jacobs must prove: "(1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Daly v. Nexstar Broadcasting, Inc.*, 542 F. Supp. 3d 859, 869 (S.D. Ind. June 1, 2021). The statement must be one that "tends so to harm

the reputation of another as to lower him in the estimation of the community or to deter a third

person from associating or dealing with him." *Newman v. Jewish Cmty. Ctr. Assn. of Indianapolis*,

875 N.E.2d 729, 734-35 (Ind. Ct. App. 2007) (internal quotations and citation omitted). The

defamatory statement must also be false. *Melton v. Ousley*, 925 N.E. 2d 430, 437 (Ind. Ct. App.

2010). Whether a statement is defamatory is generally a question of law unless the statement is

reasonably susceptible to either a defamatory or non-defamatory interpretation. *Newman*, 875

N.E.2d at 739.

Mr. Pherson argues that both statements fail to meet the standard for defamation in several

ways. But the Court finds that argument that Mr. Jacobs cannot show that Mr. Pherson made the

statements with actual malice is the most persuasive. "A person alleging defamation is required to

show the communication was made with actual malice." *Zidlick v. Kohl's Ind. Inc.*, 2013 WL

139676, at *3 (S.D. Ind. Jan. 11, 2013). Actual malice occurs where "a defamatory falsehood was

published with knowledge of its falsity or with reckless disregard of whether it was false." *Id.*

(quoting *Kitco, Inc. v. Corp. for General Trade*, 706 N.E.2d 581, 588 (Ind. Ct. App. 1999)).

Mr. Pherson was a supervisor of inmates who worked in the ODR, including Mr. Jacobs.

Therefore, by the nature of his position, he could comment on his supervision of those employees

and their presentation at work and work performance—including a work attitude. Mr. Jacobs

argues that Mr. Pherson never observed him directly or gave him a formal evaluation and that he

received positive evaluations from his previous jobs and after he was reassigned to the ODR. But

these evaluations were made by other staff leaders, or some, involve work history in other

positions, and none have bearing on Mr. Pherson's impressions. Therefore, this is not evidence that

Mr. Pherson's comment about Mr. Jacobs' poor attitude during the 29 days that he worked in the

ODR was made with knowledge of its falsity or with reckless disregard of its truthfulness. It is

13

undisputed that Mr. Jacobs and Mr. Pherson personally interacted with each other during his brief work assignment, and while Mr. Jacobs may have different versions of those events, it establishes that Mr. Pherson was able to observe him to formulate his impressions at work. Further, the defendant argues that personal observation is not the only way a supervisor could learn of an employee's attitude on the job. Dkt. 39 at 14. Finally, the defendant contends that the statement that Mr. Jacobs had a poor attitude was an opinion of the supervisor and not a false statement of fact as required for defamation. *Id.* at 13. This is persuasive to the Court— Mr. Pherson responded to the June 2019 grievance explaining his reason for the job reassignment was in part due to poor work attitude, and Mr. Pherson attested that the new assignment would allow him to supervise Mr. Jacobs more closely, likely to further explore his own impressions of Mr. Jacobs' attitude or those that may have been reported to him by others in the department.

Mr. Pherson's statement that Mr. Jacobs was transferred due to "rumors of theft" fails to be defamatory for the same reason. Mr. Pherson did not accuse or otherwise report that Mr. Jacobs committed the theft. Mr. Jacobs has designated no evidence that he was ever identified as a participant in the theft. Mr. Pherson attested that theft had occurred in the ODR, multiple people worked there, and an approach to address the issue was often to rotate an employee to a different position to monitor changes. There is no evidence that Mr. Pherson made this statement knowing it was false or with recklessness, rather the statement indicated simply that rumors of theft in the department had occurred during the relevant time period.

Moreover, the Court notes that Mr. Jacobs was placed back in the ODR in short order, and during his brief reassignment, he was given other job opportunities. There is no evidence that he was unable to be moved into the cleaning position of the administrative offices because of Mr. Jacobs' grievance response. Once he started his second assignment in the ODR, Mr. Pherson

attested Mr. Jacobs' attitude improved and his work evaluations were positive. Thus, Mr. Jacobs has not shown that his reputation was harmed in the community or that third persons were deterred from working with him. Indeed the evidence shows that Mr. Jacobs continued to have work, positive reviews, and qualified for other positions and programs.

Because no reasonable jury could find that Mr. Jacobs has proved essential elements of his defamation claims, Mr. Pherson is entitled to summary judgment on these state claims. These claims are **dismissed with prejudice**.

### IV. Conclusion

Mr. Jacobs' motion for summary judgment, dkt. [30], is **DENIED**. Mr. Pherson's cross-motion for summary judgment, dkt. [38] is **GRANTED**.

Final Judgment consistent with this Order and the Court's screening order of April 10, 2020, (docket 8), shall now issue.

**IT IS SO ORDERED.**

Date: 3/21/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

ANTHONY JACOBS
871493
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

15

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com

16